COMBS, *Administrator, Appellant,* v. GOLDSWORTHY *et al.*

DIVISION ONE.

1. **Mortgage:** ADVERSE POSSESSION: FORECLOSURE. Adverse possession by the mortgagor of the mortgaged premises for the statutory period is necessary to bar the right of foreclosure, although the debt itself has already been barred by limitation.

2. ———: ———. The acts or declarations necessary to make the mortgagor's possession adverse to the mortgagee must be such as to vindicate the former's claim of superior title or such as to put a reasonably prudent mortgagee on inquiry whether the holding was hostile to his right or not.

3. ———: ———. The foregoing rule applies to the grantee of the mortgagor with notice of the mortgage.

*Appeal from DeKalb Circuit Court.*—HON. O. M. SPENCER, Judge.

REVERSED AND REMANDED.

*Jones & Jones* for appellant.

(1) While the statute of limitations applicable to personal actions may defeat a suit upon the notes secured by the deed of trust sought to be foreclosed, still the deed of trust itself can be foreclosed as long as no personal deficiency judgment over is asked for, provided no ten years' adverse possession is shown against mortgagee as required by real-estate limitation act. *Lewis, Adm'r, v. Schwenn,* 93 Mo. 26; *Booker, Adm'r, v. Armstrong, Adm'r,* 93 Mo. 49; *Orr v. Rode,* 101 Mo.

387; *Benton Co. v. Czarlinsky*, 101 Mo. 275; *Gardner v. Terry*, 99 Mo. 523; *St. Louis v. Priest*, 103 Mo. 652. (2) The evidence in this case does not show any adverse possession on part of Goldsworthy, so pronounced and decisive in character that it will avail against a mortgagee. The rule applicable to mortgagees being different from that enforced against persons entitled to immediate possession with no privy or contractual relations existing between the adverse holder and the claimant, mortgagees before foreclosure having no possessory control over the property or over the actions of the owner; and only ordinary proprietary acts of the owner, as shown in this case, convey no intelligence to a mortgagee that a possession is in any way intended to be adverse to his mortgage. 2 Jones on Mortgages [4 Ed.] sec. 1202, and cases cited; 1 Jones on Mortgages [4 Ed.] sec. 672, and cases cited; *Atchison v. Pease*, 96 Mo. 567; *Kennett v. Plummer*, 28 Mo. 145; *Pease v. Iron Co.*, 49 Mo. 128; Wood on Limitation of Actions, sec. 221. *Benton Co. v. Czarlinsky*, 101 Mo. 280. (3) An agent, like Goldsworthy, where the fiduciary relations existing between him and Duff were not dissolved until 1880 (the time of Duff's death), is estopped from setting up adverse possession, at least for the time prior to 1880, if not altogether. Any other rule is against public policy, tending to destroy the confidence and sacred relationship existing between principal and agent, which the law is so zealous to fully guard. Mechem on Agency, secs. 66, 68, 454, 455, 456, 457, 461; *Grumley v. Webb*, 44 Mo. 444.

*S. H. Corn* for respondent.

(1) There is no assignment of errors in this case, and there is nothing for this court to review except the finding of the court below upon the facts. In cases both

at law and equity this court will defer to the finding of the facts by the trial court, and not disturb such finding if supported by any testimony. *Smith v. Finn,* 77 Mo. 499; *Chapman v. McIlwrath,* 77 Mo. 38; *Hendricks v. Woods,* 79 Mo. 599; *Gaines v. Fender,* 82 Mo. 497; *Hamilton v. Boggess,* 63 Mo. 233. (2) The petition in this case should be dismissed for want of grounds of equity jurisdiction. The statute, chapter 116, Revised Statutes, prescribes the remedy for the foreclosure of mortgages in this state, and proceedings thereunder are uniformly held by this court to be proceedings at law. *Carr v. Holbrook,* 1 Mo. 240; *Thayer v. Campbell,* 9 Mo. 280; R. S., sec. 7084; *Mason v. Barnard,* 36 Mo. 38; *Davis v. Holmes,* 55 Mo. 349; *O'Fallon v. Clopton,* 89 Mo. 284. This remedy at law must be resorted to in all cases where it is adequate to furnish the proper relief. In such cases equity has no jurisdiction. This is but invoking the application of the first principle upon which equity jurisdiction was originally based. Judgment for the debt secured is an indispensable prerequisite of this statute to the further relief of foreclosure of the equity of redemption. This statute furnishes no remedy to the mortgagee who seeks no judgment for the debt. If no judgment can be entered for the debt, because of the bar of the statute of limitations or for any other reason, no foreclosure can be had. The bar of the statute of limitations furnishes no ground for equitable relief; a court of equity cannot "set aside an act of the legislature, or disregard a statute founded on reasons of public policy and mandatory in its nature." *Bauer v. Gray,* 18 Mo. App. 173; concurring opinion of Judges BLACK, RAY and NORTON in *Kline v. Vogel,* 90 Mo. 250. (3) The statute of limitations had run against this action. Action for the foreclosure of a mortgage accrues as soon as default is made in payment of the debt secured. No action of any character can be maintained

in the courts of this state, unless begun within ten years from the time the cause of action accrued. R. S., secs. 1989, 6764, 6773; *Hunter v. Hunter*, 50 Mo. 451; *Johnson v. Johnson*, 81 Mo. 331; *Bush v. White*, 85 Mo. 358. (4) This is an action for the recovery of money, not for the "recovery of lands, tenements and hereditaments, or for the recovery of the possession thereof." 1 Chitty's Pleadings [10 Am. Ed.] p. 19; R. S., sec. 7082; *Tierney v. Spiva*, 97 Mo. 98; *Riley's Adm'r v. McCord's Adm'r*, 21 Mo. 285; *Miles v. Smith*, 22 Mo. 502; *Perkins v. Woods*, 27 Mo. 547; *Burdyne v. Mackey*, 7 Mo. 374; *Aubuchon v. Lory*, 23 Mo. 99. In this state a mortgage has long been held to be a security only for a debt; it creates a lien upon the land but does not convey the legal title; the mortgagor remains owner, and his possession is not subservient to the mortgagee. The debt is the principal thing, the mortgage is incident to the debt; whatever affects the debt operates upon the mortgage. *Kennet v. Plummer*, 28 Mo. 145; *Ward v. Hildebrand*, 46 Mo. 284; *McNair v. Picotte*, 33 Mo. 57; *Johnson v. Johnson*, 81 Mo. 331; *Bush v. White*, 85 Mo. 356. (5) The testimony in this case fills all the requirements of the law for adverse possession. Possession for the requisite time, with bare omission to recognize the mortgage, is sufficient. *Lewis v. Schwenn*, 93 Mo. 26–32; *St. Louis v. Priest*, 103 Mo. 652; *McNair v. Lott*, 34 Mo. 285–302; *Cape Girardeau v. Harbison*, 58 Mo. 90–96; *Moreau v. Dutchmundy*, 18 Mo. 529; *Chouteau v. Burlando*, 20 Mo. 482. If the possession originated in fraud it shows its hostile character, but does not defeat the operation of the statute. *Walker v. Bacon*, 32 Mo. 144-158.

BRACE, J.—This is an action to foreclose a mortgage on certain tracts of land in DeKalb county, described as containing five hundred and thirty and one-half

acres, duly executed and acknowledged by the defendant, W. H. Taylor, bearing date July 15, 1870, and filed for record in said county on the twenty-fifth of July, 1870, to secure the payment of two promissory notes, also executed by the said Taylor, dated June 13, 1870, each for the sum of $1,000, both payable to the said John Duff; one, one year, and the other, two years after date, and both bearing interest from date at the rate of ten per cent. per annum.

It is alleged in the petition that the defendant Goldsworthy claims some interest in the lands under a quitclaim deed therefor from said Taylor, dated July 25, 1870, and recorded in said county on the fifteenth of June, 1871; and that defendant, Mathew L. Wrigley, is in possession of the premises under said Goldsworthy; and that said notes were given in part payment of the purchase money for said land, and with interest thereon, except one year's interest on each of said notes, remains unpaid, and prays that the land, or so much thereof as may be necessary to pay off and discharge the remainder of said notes and interest, be sold, and the proceeds applied to the payment thereof.

The suit was instituted August 15, 1887. The defendant Goldsworthy, alone, answered the petition. His plea was payment and the statute of limitations, upon which issue was joined by reply. The case was submitted to the court on the evidence without any declarations of law, the issue found for the defendant, and from the judgment in his favor plaintiff appeals.

It appears from the evidence that in the year 1869 the said John Duff, who was a resident of Boston, Massachusetts, was the owner of twenty-five thousand or thirty thousand acres of land in Missouri, including this land in DeKalb county; that Goldsworthy was a lawyer, located and doing business at Cameron, Missouri; that on the fourth of November, 1869, he wrote

a letter to Duff, informing him that his lands in DeKalb county were depreciating in value, because of neglect; that the timber was being cut off and hauled to town and sold by trespassers; that tax titles were being acquired and conveyed to some portions of it, and intimating that he was in danger of losing the title to some of his lands unless his interests were protected, and suggested that if he, Goldsworthy, had authority from him he would stop these inroads being made upon Duff's interests by a set of irresponsible rascals, and adds: "Should you desire to sell this land, or any portion of it, I would act as agent, with your approval." By his letter of date ninth of November, 1869, Duff accepted Goldsworthy's proposition, appointed him his agent, and he immediately took charge of the lands as such; advised Duff that his lands were worth from $10 to $15 per acre; took measures to relieve the lands of tax liens and to keep off trespassers. On the twenty-fifth of March, 1870, Goldsworthy wrote Duff that he thought the land could be sold for $4,000 or $5,000. On the thirtieth of March Duff replied that he desired to sell, and requested Goldsworthy to get the best offer and terms he could. On the eleventh of April Goldsworthy wrote Duff that he was offered $4,000 for the land, one-half down, balance in two years with ten-per-cent. interest. On the seventeenth of May he called Duff's attention again to the offer by another letter of that date, stating that Perrine was the name of the man that made the offer. On the fourth of June, by his letter of that date, Duff instructed Goldsworthy to sell for $4,000 cash, if not all cash, on such terms as Goldsworthy thought advisable. On the thirteenth of June Goldsworthy wrote Duff that he had sold to Perrine for $4,000, one-half cash, balance in one and two years at ten-per-cent. interest, and inclosed a deed for Duff

to execute and acknowledge, which he did, and returned same to Goldsworthy.

On the seventh of July the latter wrote Duff that Perrine's wife would not sign the mortgage to secure the payment of the balance of the purchase money, and that Perrine had sold to W. H. Taylor, who desired a deed from Duff direct, which he inclosed for execution, together with Taylor's two notes, each for $1,000, payable to Duff's order (these are the notes secured by the mortgage sued on, dated June 13, 1870); that he had the first deed still in his possession, and would return it as soon as the second deed was received, and that Perrine would be at all expense. On the fifteenth of July, Taylor executed and acknowledged the mortgage.

On the twenty-first of July Goldsworthy wrote another letter to Duff advising him that the deed to Taylor had not yet come to hand, and reciting the contents of his former letter. This deed must have come to his hand on or before the twenty-fifth of July, for on that day he filed the mortgage sued on executed by Taylor to Duff for record, and on the same day took the quitclaim deed from Taylor to himself under which he now claims the land. On the third of June, 1871, Goldsworthy writes to Duff advising him that he had not yet settled all the tax titles and of the amount he had expended for redemptions, and saying that Mr. Taylor is a hard-working man and is improving the premises, and desires an extension of a year on the balance of purchase money. On the fifteenth of June, 1871, he files his quitclaim deed from Taylor for record. And on the thirtieth of the same month writes Duff as follows:

"CAMERON, Mo., June 30, 1871.

"*John Duff, Esq., Boston, Mass.*

"DEAR SIR:—Herewith I send you draft for $200, the interest for one year upon W. H. Taylor's notes.

Mr. Taylor says it is impossible for him to pay the first note this year. He says further, that he has made every effort to borrow the money, and has not succeeded. He will be able to promptly pay them both when the second matures, for then money owing to him will be due. Please receipt.

Respectfully,

"J. E. GOLDSWORTHY."

On the twentieth of April, 1872, Goldsworthy wrote the following letter to Mr. Duff:

" CAMERON, Mo., April 20, 1872.

"*John Duff, Esq., Boston, Mass.*

"DEAR SIR: — The William H. Taylor mortgage, given to secure the deferred payments upon the tract of land I sold for you in DeKalb county was due last June; but you granted an extension of one year upon payment of the interest. William H. Taylor sold the land to a Henry Jordan, to whom I loaned $1,500, and took a second mortgage. Jordan last fall tilled eighty acres of said tract with wheat, which was winter-killed, and he is now planting corn in his wheat field. This failure of the wheat crop compels him to ask for an extension of six months—or one year, if you will grant it, would be preferred. He says he will pay the interest when due. I feel an interest in this matter, from the fact that if you insist upon payment of the debt in June, I shall have to raise the amount to make myself secure, or, in other words, I shall have to buy your claim. I feel very certain Jordan will not be able to meet it in June. To have to raise this amount of money at that time would embarrass me very much, as I design to spend the summer in the East, attend the Jubilee, and perhaps get married. If you can grant his request, I shall feel it a favor as much as himself. If you cannot grant longer time, please advise me early.

"I am, very respectfully,

"J. E. GOLDSWORTHY."

It appears from the evidence that Taylor was an express agent living in Cameron; that he never occupied or improved the premises, or had anything to do with this transaction, except as a puppet moved by Goldsworthy; that his notes have never been paid; that Goldsworthy never returned the mortgage to Mr. Duff after it was recorded, and that his story in his letter to Duff about the sale from Taylor to Jordan, Jordan's cultivation of the eighty acres in wheat, the loan of $1,500 to him by Goldsworthy upon mortgage, was manufactured out of whole cloth for his own ulterior purposes; that in May, 1871, or 1872, Goldsworthy put the defendant, M. T. Wrigley, on the land, who put up a small house, and lived on it until 1874 or 1875; when he moved himself and his house off it, and no one has lived on it since. He fenced and broke about eighty acres for Goldsworthy, for which he, Goldsworthy, paid him. In 1873, Goldsworthy removed from Cameron to Central Falls, Rhode Island, where he has since resided. In 1875, one Knoop took charge of the land for Goldsworthy, and continued in charge until 1882, when he turned it over to Wrigley again, who has since been in charge for Goldsworthy. In the meantime additional fencing was made, and the land rented to various persons, the rents applied in payment therefor, and for taxes, and the remainder, if any, remitted to Goldsworthy. In 1880, Duff died without having ever revoked the original power of attorney given to Goldsworthy; and in July, 1887, the plaintiff was duly appointed and qualified as his administrator by the probate court of Shelby county, Missouri, and brought this suit.

I. Counsel for defendant, in an able brief, undertake to maintain the proposition that the notes given to secure the mortgage being barred by the statute of limitations, the right of action to foreclose the mort-

gage is also barred.   This question has been so recently
and so frequently considered by this court, that we
deem it unnecessary to review the argument, being
entirely satisfied with the conclusion reached upon this
subject in previous cases, that in order to bar such an
action there must be adverse possession of the mort-
gaged property for the requisite period to create the
bar.   *St. Louis v. Priest*, 103 Mo. 652; *Benton Co. v.
Czarlinsky*, 101 Mo. 275; *Gardner v. Terry*, 99 Mo. 523;
*Booker v. Armstrong*, 93 Mo. 50.   And as the posses-
sion of the mortgagor is consistent with the right and
title of the mortgagee, to render such possession adverse
to the mortgagee, it must appear that the mortgagor
has, by his acts or declarations, repudiated the mort-
gage and denied the right and title claimed under it.
Mere possession under claim of title is not necessarily
adverse to the mortgagee.   He must be advised by
some act or declaration that possession is being held
against his superior right; or at least something must
be said or done that would put a reasonably prudent
man on inquiry as to whether such holding was hostile
to his right.   *Benton Co. v. Czarlinsky, supra; Lewis v.
Schwenn*, 93 Mo. 26; 1 Jones on Mortgages, sec. 672.
The rule is, of course, the same as to the grantee of
the mortgagor with notice of the mortgage.

There is not to be found in the evidence in this
case, from the time that Duff first appointed Golds-
worthy his agent to protect and manage his interests in
this land, up to the time he filed his answer in this
case, a single assertion of any right or claim of interest
in the land, brought to the knowledge of Duff, which
he did not claim to hold in subordination to this mort-
gage which he himself held, and continued to hold as
such agent up to the time this suit was brought.   So
far as the evidence shows he always held himself out to
Duff as being true to the confidential relation which he

Combs v. Goldsworthy.

sustained to him as his agent, and which forbade that he should acquire any interest in this land antagonistic to the master whom he professed to be serving. That he was playing false to his principal, and had the sinister ulterior purpose concealed from his principal, of obtaining his estate in the end by a fraudulent possession, in no way changes the actual relation he sustained to his principal, or the character of the possession he had, and which it was his duty to maintain in the first place for the benefit of his principal. Occupying the dual relation to this land of grantee of Taylor, subject to the mortgage, and agent of Duff, the mortgagee, he could not originate in himself a possession adverse to his principal, the mortgagee, without first surrendering the trust reposed in him, canceling the relation of principal and agent existing between them, and asserting a title antagonistic to the interest of his former principal under his mortgage.

The history of this transaction is laid bare in the letters of the defendant himself, and the uncontradicted evidence in the case, whilst it does make out a clear case of false dealing by this agent with his principal, it does not make out a case of adverse possession against that principal. And his administrator is not barred from having his mortgage foreclosed as against the title of this faithless agent.

The judgment of the circuit court is, therefore, reversed and the cause remanded to that court where an appropriate decree of foreclosure will be entered. All concur.